**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2812-22

ROBERT DIBLASIO,

    Plaintiff-Appellant,

v.

ARLENE DIBLASIO,

    Defendant-Respondent.

_____

Argued June 18, 2024 – Decided July 15, 2024

Before Judges Currier and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0335-12.

Joseph V. Maceri argued the cause for appellant (Sarno da Costa D'Aniello Maceri LLC, attorneys; Joseph V. Maceri, of counsel and on the briefs; Kiera E. Kenniff and Lydia Latona, on the briefs).

John A. Daniels argued the cause for respondent (Daniels & Daniels, LLC, attorneys; John A. Daniels, on the brief).

PER CURIAM

Plaintiff Robert DiBlasio appeals the denial of his cross-motion seeking termination of his alimony obligation to his former wife, defendant Arlene DiBlasio, as well as the denial of his subsequent reconsideration motion. Since the trial court erred in concluding an "anti-Lepis clause"[1] barred plaintiff's requested relief, we vacate the portions of the January 24, 2023 and April 24, 2023 orders on appeal and remand for further proceedings consistent with this opinion.

I.

We glean the following salient facts from the record. The parties were married on September 23, 1988, and have four adult children. During the marriage, plaintiff worked on shipping docks, changing tires on the heavy machinery used to load cargo ships.

On April 20, 2012, the parties divorced—both were represented by counsel. A dual final judgment of divorce incorporated the terms of the parties' matrimonial settlement agreement (MSA). The section of the MSA entitled "ALIMONY" sets forth in paragraph eight that plaintiff "shall pay

---

[1] An anti-Lepis clause prohibits subsequent judicial modification of support obligations based on changed circumstances pursuant to Lepis v. Lepis, 83 N.J. 139, 150-53 (1980).

permanent alimony to [defendant] in the amount of $557.00 per week." Plaintiff's alimony obligation was calculated based on an annual income of $122,000 imputed to plaintiff and $35,000 imputed to defendant. Within the "ALIMONY" section of the MSA, paragraph twelve sets forth: "The above-mentioned alimony payments shall continue to be the responsibility of [plaintiff] until the earlier happening of the following events: death of either party, [defendant's] remarriage, or [superseding] [c]ourt [o]rder."

In paragraph sixteen, also under the heading "ALIMONY," the MSA contains a "Crews Acknowledgment," which sets forth:

> The parties represent that they have been advised by their attorneys about the New Jersey Supreme Court decisions in the cases Crews v. Crews, 164 N.J. 11 (2000) and Weishaus v. Weishaus, 180 N.J. 131 (2004). Both parties acknowledge that the property division and alimony provided for in this [MSA], coupled with the earnings or ability to earn will not allow either party to maintain a lifestyle, now and in the future commensurate with the standard of living enjoyed during the marriage. The parties acknowledge that they have been advised by their attorneys of their right to have a hearing at this time with regard to the issue of determining the marital lifestyle and have elected to voluntarily defer judicial determination of the marital lifestyle. Both parties understand fully the potential proof problems that may exist if in the future the [c]ourt is asked to determine the marital lifestyle. Both parties are aware that they must preserve evidence of the marital lifestyle for

3

presentation to the [c]ourt if they intend to ask the [c]ourt to make said determination in the future.

The parties agree specifically that no court shall have the jurisdiction or power to modify this provision. The parties have explained to them the provisions of Lepis . . . and Morris v. Morris, 263 N.J. Super. 237 (App. Div. 1993). The parties, and each of them, further agree that in the event that this provision is sought to be modified, the party seeking said modification shall hold the other party harmless and indemnify him/her totally for all costs, fees, payments or other expenses including counsel fees incurred by the other party in order to enforce this [MSA]. In the event that this provision is nevertheless modified, the party who obtained the modification shall indemnify and hold the other party harmless from any and all additional costs, payments and fees, including counsel fees, incurred as a result of said modification and his or her compliance with it.

In the certification accompanying the cross-motion, plaintiff set forth he was diagnosed with high blood pressure in 2021. The medication prescribed for the condition made it difficult for him to perform his work at the shipping docks. On the advice of his doctor, plaintiff took twenty-six weeks of disability leave. During this time, he went into arrears on his alimony obligation.

In March 2022, plaintiff's disability benefits ended, so he returned to work. Plaintiff alleges his high blood pressure remained a problem but offered no documentation from an expert opining that he could no longer work as a

4

result of any medical condition.  Through his labor union, plaintiff was offered an early retirement with increased pension benefits.  He accepted the offer and received his final paycheck on June 2, 2022.  Plaintiff receives an early retirement pension benefit of approximately $3,500 per month.

On September 27, 2022, defendant filed a motion to enforce litigant's rights seeking an order compelling plaintiff to pay alimony arrears, and for other relief.  Plaintiff filed a cross-motion seeking, in part, to terminate his alimony obligation.

On January 6, 2023, the trial court denied the portion of plaintiff's cross-motion seeking to terminate alimony after finding that the parties waived the ability to modify plaintiff's alimony obligation in the MSA.[2]  Plaintiff moved for reconsideration, again seeking an order terminating or reducing his "alimony obligation to [d]efendant due to a substantial change in his financial circumstances."  In the alternative, plaintiff sought a hearing for a determination whether he waived alimony modification or termination under the MSA.

---

[2]  The order also modified plaintiff's child support obligation to reflect that some of his children were emancipated and updated the parties' qualified domestic relations order as to the distribution of pension payments.  These determinations are not being appealed.

Plaintiff asserted for the first time in the motion for reconsideration that "[i]t was never [his] understanding that [he] would be paying alimony beyond [his] retirement." Further, plaintiff certified he "did not ever contemplate nor was [he] made aware that it was a possibility that after [he] retired . . . [d]efendant would continue to receive alimony payments along with a portion of [his] pension benefit[s]." Plaintiff also alleged his highest annual income post-retirement would be $61,056, roughly half of what he made at the time the alimony obligation was initially established.

At oral argument on April 21, 2023, plaintiff's counsel asserted the trial court had incorrectly interpreted the terms of the MSA to include an anti-Lepis clause, highlighting that a superseding court order was among the enumerated events which could terminate alimony. The trial court found that none of plaintiff's arguments had been raised previously, and it was inappropriate to introduce new arguments on a motion for reconsideration. Additionally, the trial court found that retirement is an anticipatable event and, therefore, had the parties intended alimony to be modified upon plaintiff's retirement, such a provision could have been incorporated into the MSA, and it was not.

On April 24, 2023, the trial court denied plaintiff's motion for reconsideration in an oral decision and issued a memorializing order. Plaintiff

6

filed a notice of appeal only as to the portions of the orders that deny his applications for a termination or modification of alimony.

## II.

On appeal, plaintiff argues the trial court erred in denying the cross-motion and motion by incorrectly concluding the parties' MSA contains an anti-Lepis clause applicable to his alimony obligation. In the alternative, plaintiff contends the trial court should have held a hearing to determine if the parties' intention was for the MSA to be unmodifiable, even if there were changed circumstances. Plaintiff further proffers that even if the MSA did contain an anti-Lepis clause, the trial court should have terminated his alimony obligation as unjust and unreasonable.

Plaintiff's briefs primarily address his motion for reconsideration. Our review necessarily starts with analysis as to the propriety of the underlying portion of the January 24, 2023 order for which reconsideration was sought.

We begin by acknowledging our standard of review. We owe no special deference to the trial court's interpretation of a contract, such as the MSA in this case, since that is a legal determination. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo). We similarly review de novo all legal

7

conclusions drawn from the trial court's finding of fact. <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

III.

We turn first to plaintiff's argument that the trial court erred by concluding the MSA included an anti-<u>Lepis</u> clause, prohibiting alimony termination or modification, and denying his cross-motion. Our court system places a high value on the amicable settlement of matrimonial disputes. <u>Quinn v. Quinn</u>, 225 N.J. 34, 44 (2016) (citing <u>Konzelman v. Konzelman</u>, 158 N.J. 185, 193 (1999)). We review MSAs by applying basic contract principles and, therefore, strive to discern and implement the parties' intent. <u>J.B. v. W.B.</u>, 215 N.J. 305, 326 (2013).

Under N.J.S.A. 2A:34-23, alimony "may be revised and altered by the court from time to time as circumstances may require." To modify an alimony obligation, the movant must show permanently "changed circumstances" from when the prior alimony award was fixed. <u>Lepis</u>, 83 N.J. at 146 (internal quotation marks omitted). "There is . . . no brightline rule by which to measure when a changed circumstance has endured long enough to warrant . . . modification of a support obligation." <u>Donnelly v. Donnelly</u>, 405 N.J. Super. 117, 128 (App. Div. 2009) (quoting <u>Larbig v. Larbig</u>, 384 N.J. Super. 17, 23

8

(App. Div. 2006).  Rather, these determinations are delegated to the sound discretion of Family Part judges, based upon their experience and the facts of the case.  Ibid.  As our court stated in J.B.,

> Events that qualify as changed circumstances to justify an increase or decrease of support include an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law.
>
> [J.B., 215 N.J. at 327 (citing Lepis, 83 N.J. at 151).]

"In deciding whether to modify an agreement due to changed circumstances, '[t]he proper criteria are whether the change in circumstance is continuing and whether the agreement or decree has made explicit provision for the change.'" Quinn, 225 N.J. at 49 (quoting Lepis, 83 N.J. at 152).

The parties may include an anti-Lepis clause in a MSA reasonably limiting the situations that could qualify as a change in circumstances sufficient to modify an alimony obligation.  See id. at 49-50.  This court has previously determined that such anti-Lepis clauses do not offend public policy and are enforceable so long as they are entered into "with [the] full knowledge" of both impacted parties.  Morris, 263 N.J. Super. at 241.

9

Plaintiff alleges the trial court improperly concluded the MSA contained an anti-Lepis clause precluding any and all alimony modifications. The MSA provision titled "Crews Acknowledgment," at paragraph sixteen within the section entitled "ALIMONY" sets forth as follows: "The parties agree specifically that no court shall have the jurisdiction or power to modify this provision." The trial court interpreted the phrase "this provision" to mean that no portion of the entire section titled "ALIMONY" could be changed, including the amount of the alimony obligation. Plaintiff argues this was an overbroad reading by the trial court because the non-modifiability language only applies to the "Crews Acknowledgment" contained in paragraph sixteen, and not the entirety of the section titled "ALIMONY."

When interpreting an MSA, "[t]he court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). We are instructed "to ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514,

528 (App. Div. 2009). And when the "terms of the contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017). Courts do not have the discretion to rewrite the agreement "or grant a better deal than that for which the parties expressly bargained." Quinn, 225 N.J. at 45.

The trial court found the language of the MSA was not ambiguous and clearly stated defendant's alimony award was intended to be permanent and non-modifiable. We disagree.

The parties agreed in the MSA that defendant was awarded permanent alimony, which could be changed upon (1) the death of either party, (2) defendant's remarriage, or (3) a superseding court order. The plain language of this provision authorizes modification of plaintiff's alimony obligation based on a court order, which could include revision of the alimony amount where a change of circumstances is established by the preponderance of the credible evidence under prevailing law. Thus, the parties themselves agreed to modification of plaintiff's alimony obligation by "[superseding] court order."

The language prohibiting modification appears only in paragraph sixteen which contains the Crews Acknowledgment waiving the right to a judicial

11

determination of the marital lifestyle for purposes of determining alimony. In this paragraph, the parties contemplated a further court order could be considered as to whether alimony modification is appropriate. However, the parties had waived their right to present evidence of their marital lifestyle in the future.

The language prohibiting modification directly follows the Crews Acknowledgment, establishing the parties agreed that the Crews language paragraph sixteen was non-modifiable, rather than the amount of the alimony award established in paragraph twelve. The conclusion that the MSA does not contain an anti-Lepis clause is further evidenced by the subsequent reference to the Lepis and Morris standards in paragraph sixteen and through imposing reciprocal obligations to indemnify each other should modification be sought.

We are unpersuaded by defendant's argument that since the MSA addresses the equitable distribution of plaintiff's pension, alimony modification or termination based upon retirement was precluded. The issue of equitable distribution is separate and distinct from an award of permanent alimony. Modification of plaintiff's alimony obligation based on retirement is not precluded through any language in the MSA, which allows for a change in alimony by superseding court order.

A-2812-22

Because we remand on other grounds, we need not reach plaintiff's argument that regardless of whether there is an anti-Lepis clause in the MSA, the trial court erred in not modifying his alimony obligation on equitable grounds. We decline to exercise original jurisdiction to decide whether plaintiff has established a prima facie change of circumstances sufficient to warrant a plenary hearing, and remand to the trial court to make that determination. See Price v. Himeji, LLC, 214 N.J. 263, 295 (2013).

In light of our decision to vacate the portion of the January 24, 2023 order on appeal, the portion of the April 24, 2023 order denying reconsideration thereof is also vacated. Therefore, we need not reach plaintiff's remaining arguments as to the trial court's denial of his motion for reconsideration. See In re City of Plainfield's Park-Madison Site, 372 N.J. Super. 544, 550 (App. Div. 2004) ("Issues that have been rendered moot by subsequent developments render legal issues abstract and outside the proper realm of courts.").

## IV.

We briefly address plaintiff's argument that this matter should be assigned to a different judge on remand. Under Rule 1:12-1(g), a judge may be disqualified for any "reason which might preclude a fair and unbiased

hearing and judgment, or which might reasonably lead counsel or the parties to believe so." Plaintiff alleges the trial court's denial of his motion for reconsideration is sufficient to show that the judge "was loathe to even contemplate that [their] interpretation was incorrect."

We are unpersuaded. "[B]efore the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable." State v. Marshall, 148 N.J. 89, 279 (1997). We discern no objectively reasonable showing of bias or unfairness on the part of the trial court.

To the extent we have not addressed any remaining arguments, we are satisfied they lack sufficient merit to warrant further discussion in this written opinion. R. 2:11-3(e)(2).

We reverse, and remand for the court to consider whether plaintiff has established changed circumstances regarding his alimony obligation. If plaintiff has made such a demonstration, the court shall determine whether it requires further briefings and a plenary hearing. We take no position regarding the outcome of any of the substantive issues.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION